# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-07-00178-CR
---

**The State of Texas, Appellant**

**v.**

**Amanda Griffey, Appellee**

---
### FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY
### NO. 740,330, HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING
---

## O P I N I O N

The State charged Amanda Griffey with the Class B misdemeanor of driving while intoxicated (DWI). *See* Tex. Penal Code Ann. § 49.04(a) (West 2003). Griffey filed a pretrial motion to suppress, contending that the evidence of the offense was discovered during an improper detention. Following a hearing, the county court at law suppressed the evidence, and the State appeals. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West 2006). The issue on appeal is whether the police lawfully detained Griffey based on a report from a fast-food restaurant manager that a person was passed out behind the wheel of a vehicle in the restaurant's drive-through lane. Because Griffey's detention was not supported by reasonable suspicion, we affirm the trial court's order.

## BACKGROUND

On July 15, 2006, at approximately 3:00 a.m., William Nelson, an Austin police officer, was dispatched to the Whataburger restaurant located at 3400 West Slaughter Lane in response to a call from the manager reporting a person "passed out behind the wheel in the drive-through."[1] Nelson testified that he was not given any other information other than that someone was passed out behind the wheel in the drive-through lane. When Nelson arrived at the scene, an unidentified Whataburger employee pointed to Griffey's car.

Nelson testified that Griffey was awake at the time he arrived and that her vehicle was sitting next to the drive-through window. Nelson pulled his patrol car in front of Griffey's vehicle, blocking it from the front, while the line of vehicles behind Griffey in the drive-through lane blocked her vehicle from the rear. At the hearing on the motion to suppress, Nelson conceded that he detained Griffey at the time he used his vehicle to stop her from leaving. Nelson testified that he detained Griffey based on the report that someone was passed out behind the wheel in the drive-through lane.

After detaining Griffey, Nelson asked her to turn off her engine and step out of the vehicle. After she had done so, Nelson detected the odor of an alcoholic beverage coming from Griffey. This was Nelson's first indication that alcohol was involved. Because Nelson was nearing the end of his shift, he called for another officer to conduct the DWI investigation. Officer James

---

[1] It is not clear from the record whether the manager provided any identifying information during the initial phone call. At the hearing on the motion to suppress, Nelson, when asked whether he had the manager's name prior to arriving at the scene, responded, "I don't remember that. I'm sure it's in the call."

Strong arrived on site a few minutes later and, after administering field sobriety tests, placed Griffey under arrest for DWI.

In a pretrial motion, Griffey moved to suppress all evidence obtained as a result of the stop on the ground that her detention was improper because it was based solely on the manager's report that someone was passed out behind the wheel in the drive-through lane. The trial court expressly ruled that the officers' testimony was credible but that the initial detention of Griffey was unreasonable and not authorized by law. Accordingly, the trial court suppressed all of the evidence obtained as a result of the stop.

**STANDARD OF REVIEW**

When reviewing a trial court's decision on a motion to suppress, we apply a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts and reviewing the court's application of search and seizure law de novo. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). The trial court is the sole judge of the credibility of the witnesses and their testimony. *Maxwell*, 73 S.W.3d at 281. Where, as in the present case, the trial court did not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling and assume that the trial court made "implicit findings of fact supported in the record that buttress its conclusion." *Carmouche*, 10 S.W.3d at 327-28.

3

## DISCUSSION

On appeal, the State contends that the trial court erred in granting the motion to suppress because the detention did not violate Griffey's rights under the Fourth Amendment to the United States Constitution, under Article I, section 9 of the Texas Constitution, or under chapters 14 and 38 of the Texas Code of Criminal Procedure.[2] The State argues that Nelson's conduct was reasonable in light of the information he had from the call made by the Whataburger manager that someone was passed out in the drive-through lane and that Nelson was justified in detaining Griffey without further investigation.

A police officer may conduct a brief investigative detention if he has a reasonable suspicion to believe that an individual is involved in criminal activity. *Carmouche*, 10 S.W.3d at 328. The burden is on the State to elicit testimony showing sufficient facts to create a reasonable suspicion. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *see also Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (holding that State has burden of establishing reasonableness of warrantless search or seizure). A reasonable suspicion must be based on more than a mere hunch or non-specific suspicion of criminal activity. *Tanner v. State*, 228 S.W.3d 852, 855 (Tex. App.—Austin 2007, no pet.). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances at its inception and will only be justified if the officer can point to specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a specific person had engaged in or was or soon

---

[2] While the State raises these grounds in three separate issues, the arguments for all three were combined into one, and this Court will address them together as well.

would be engaging in criminal activity. *Garcia*, 43 S.W.3d at 530.[3] We look only at those facts known to the officer at the inception of the stop—a stop or search unlawful at its inception may not be validated by what it turns up. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

Reasonable suspicion may be established based on information given to police officers by citizen informants, provided the facts are adequately corroborated by the officer. *Brother v. State*, 166 S.W.3d 255, 258-59 (Tex. Crim. App. 2005). The officer should evaluate the reliability of a citizen informant by examining "the very nature of the circumstances under which the incriminating information became known to him." *Id*. at 258. A tip by an unnamed informant of undisclosed reliability may justify the initiation of an investigation; standing alone, however, it rarely will establish the requisite level of reasonable suspicion necessary to justify an investigative detention. *Florida v. J.L.*, 529 U.S. 266, 269 (2000) (citing *Alabama v. White*, 496 U.S. 325, 329 (1990)); *Davis v. State*, 989 S.W.2d 859, 863 (Tex. App.—Austin 1999, pet. ref'd). "There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified." *State v. Fudge*, 42 S.W.3d 226, 230 (Tex. App.—Austin 2001, no pet.). Factors to be considered in determining how much weight the anonymous tip deserves include an officer's prior knowledge and experience and his corroboration of the details of the tip. *See Davis*, 989 S.W.2d at 864.

---

[3] Reasonable suspicion is dependent upon both the content of the information possessed by the police and its degree of reliability. *See Alabama v. White*, 496 U.S. 325, 330 (1990). "Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture' that must be taken into account when evaluating whether there is reasonable suspicion." *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)) (citation omitted).

The circumstances surrounding a citizen-informant tip—and the resulting reliability of the information—can vary from a completely anonymous phone call to a face-to-face informant who is willing to be held accountable for his tip and whose only contact with the police results from his witnessing a criminal act. A completely anonymous tip, such as the one illustrated in *Stewart v. State*, 22 S.W.3d 646 (Tex. App.—Austin 2000, pet. ref'd), is the least reliable and must be corroborated by additional facts. In *Stewart*, an officer detained a subject for DWI based solely on an anonymous tip from a caller who stated that the driver of the vehicle appeared to be highly intoxicated and "fell down a couple of times trying to get into the vehicle." *Id*. at 648. An officer arrived on the scene and followed the vehicle described by the unidentified caller, but did not observe any traffic violations or other activity to corroborate the tip. *Id*. Because the detention was based solely on the anonymous caller's tip, which was "uncorroborated in its assertion of possible illegality," this Court held that the detention was not sufficiently supported by a reasonable suspicion that the driver was intoxicated. *Id*. at 650.

In contrast, the most reliable form of citizen-informant tip is information given by a face-to-face informant who has no other contact with the police beyond witnessing a criminal act, such as the informants in *Cornejo v. State*, 917 S.W.2d 480 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). There, the citizen informants spoke with police in person, stating that two gang members had fired a weapon at them from an automobile and pointing out the vehicle to the officers. The court held that when police receive information from a citizen "whose only contact with the police is a result of having witnessed a criminal act committed by another, the credibility and reliability of the information is inherent." *Id*. at 483. Because of the inherent reliability of the citizen informants,

6

the information they provided to police was sufficient to establish reasonable suspicion to detain the driver of the vehicle without additional corroboration.

In the instant case, the citizen informant was not completely anonymous in that he identified himself as the Whataburger manager. However, he was not a face-to-face informant, nor was he a witness to a crime because the information that he provided to the police did not allege any criminal activity. The manager simply reported that an individual was passed out behind the wheel in the drive-through line, which does not constitute criminal behavior.[4] Significantly, the manager did not report that the driver was intoxicated or that she exhibited any signs of intoxication. Furthermore, the manager did not report that the driver had been passed out or asleep long enough to obstruct the passageway or whether the drive-through was ever obstructed.[5]

The circumstances that Nelson observed when he arrived on the scene—that Griffey was awake in her vehicle at the drive-through window—not only failed to corroborate the tip, but actually contradicted the manager's report. Upon arriving at the scene, Nelson would have been justified in initiating a consensual encounter to determine if there was additional information to

---

[4] "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain reasonable suspicion of criminal conduct." *Woods v. State*, 956 S.W.2d 33, 37 (Tex. Crim. App. 1997). However, the burden is on the State to show that the officer had reasonable suspicion to believe that an individual was violating the law. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Nelson testified that he did not have any indication that alcohol was involved prior to detaining Griffey. Thus, the State failed to meet its burden of showing that Nelson, prior to the detention, had reasonable suspicion to believe that Griffey was violating any law.

[5] The State argues for the first time on appeal that Griffey "had been and still was obstructing a passageway." There is, however, nothing in the record that indicates Griffey obstructed the drive-through lane.

7

corroborate the manager's tip.[6] But instead, Nelson initiated an investigative detention without obtaining any additional corroboration of the manager's tip.[7]

While the State cites to a number of cases in which citizen-informant tips were used to establish reasonable suspicion, these cases are distinguishable because they deal with specific reports about erratic driving or other behavior that indicates criminal activity.[8] For example, in

---

[6] An investigative detention is distinguishable from a consensual encounter, which does not infringe on a constitutional right and requires no justification. *Florida v. Royer*, 460 U.S. 491, 497-98 (1983). An officer without reasonable suspicion of criminal activity may question an individual during a consensual encounter, "as long as the person to whom questions are put remains free to disregard the questions and walk away." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). However, an investigative detention occurs when a person's freedom of movement is restrained, either by physical force or a show of authority. *Johnson v. State*, 912 S.W.2d 227, 234 (Tex. Crim. App. 1995). An investigative detention constitutes a seizure and invokes constitutional safeguards. *Mendenhall*, 446 U.S. at 553.

[7] The State argues that by the time Griffey was detained, Nelson had verified all of the circumstances of the manager's report except for the fact that the driver was passed out behind the wheel. However, while Griffey's vehicle was still in the drive-through lane when Nelson arrived, "the corroboration of details that are easily obtainable at the time the information is provided, and which do not indicate criminal activity, will not lend support to the tip." *Stewart v. State*, 917 S.W.2d 646, 648 (Tex. App.—Austin 2000, pet. ref'd).

[8] *See, e.g.*, *Brother v. State*, 166 S.W.3d 255, 256-57 (Tex. Crim. App. 2005) (upholding stop based on citizen's report of erratic driving); *Webb v. State*, 760 S.W.2d 263, 273-74 (Tex. Crim. App. 1988) (upholding stop based on citizen's report that two subjects had just committed robbery); *Esco v. State*, 668 S.W.2d 358, 360-61 (Tex. Crim. App. 1982) (holding that probable cause existed based on information received from witnesses to aggravated robbery); *Wood v. State*, 573 S.W.2d 207, 214 (Tex. Crim. App. 1978) (holding that citizen informant's tip that he had been contacted by individual promoting prostitution was sufficent to establish probable cause); *Frazier v. State*, 480 S.W.2d 375, 377-78 (Tex. Crim. App. 1972) (holding that probable cause existed where witness/victim identified man who drugged her); *Gansky v. State*, 180 S.W.3d 240, 247 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding that stop was reasonable when based on citizens' report that car was traveling on wrong side of interstate); *Pipkin v. State*, 114 S.W.3d 649, 653 (Tex. App.—Fort Worth 2003, no pet.) (upholding stop where citizen observed defendant driving erratically while smoking crack pipe); *Hawes v. State*, 125 S.W.3d 535, 540 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (upholding stop based on tow truck driver's report of subject's erratic driving); *State v. Garcia*, 25 S.W.3d 908, 913-14 (Tex. App.—Houston [14th Dist.] 2000, no pet.)

*Fudge*, 42 S.W.3d 226, this Court upheld a stop based on a cab driver's unsolicited face-to-face report to the police that the driver of a vehicle, which the cab driver pointed out to the officer, "couldn't stay on the road" and that he believed the driver was intoxicated. *Id*. at 229. Based solely on the report from the citizen informant, the officer stopped the vehicle, detaining the driver on a reasonable suspicion of DWI. *Id*. The clear distinction between the activity reported in *Fudge* with the activity in the present case is that the citizen informant in *Fudge,* unlike the Whataburger manager, had observed and reported specific behavior consistent with criminal activity.

We find that the facts of the instant case are more similar to those in *Adams v. State*, No. 03-98-00615-CR, 2000 Tex. App. LEXIS 464 (Tex. App.—Austin Jan. 21, 2000, no pet.) (mem. op., not designated for publication), in which a police officer was dispatched to a Dairy Queen restaurant based on an anonymous tip that Adams had been in the Dairy Queen and that the employees believed he was intoxicated. The officer, who was familiar with Adams and knew that he had a history of driving while intoxicated, arrived on the scene and observed Adams waiting in

(holding that informant's information that he had seen underaged individuals retrieving alcohol from car in store parking lot, when corroborated with additional facts, was sufficient to establish reasonable suspicion); *Hime v. State*, 998 S.W.2d 893, 895 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (upholding stop based on call from citizen who observed subject driving erratically); *State v. Stolte*, 991 S.W.2d 336, 342-43 (Tex. App.—Fort Worth 1999, no pet.) (holding that citizen informant's report of erratic driving was sufficient to establish reasonable suspicion); *Reynolds v. State*, 962 S.W.2d 307, 311-12 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding that informant's tip was sufficient to establish reasonable suspicion where informant saw subject driving erratically); *Cornejo v. State*, 917 S.W.2d 480, 483 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (holding that information received from witnesses and victims of shooting was sufficient to establish probable cause); *State v. Sailo*, 910 S.W.2d 184, 189 (Tex. App.—Fort Worth 1995, pet. ref'd) (upholding detention based on citizen informant's information that subject was driving erratically); *Glover v. State*, 870 S.W.2d 198, 200 (Tex. App.—Fort Worth 1994, pet. ref'd) (holding detention was supported by reasonable suspicion where citizen informant reported that driver was weaving all over road).

the drive-through lane. *Id*. at *2. When Adams drove away, the officer followed him for six blocks before initiating a traffic stop. *Id*. The officer did not observe Adams driving erratically or violating any traffic laws. *Id*. This Court held that the officer did not have reasonable suspicion to detain Adams based solely on the tip of an anonymous informant without additional corroboration, noting that "[w]hile the officer's previous dealings with appellant may have tended to corroborate the anonymous caller's information, the first-hand evidence of his own eyes on the occasion in question tended to contradict that information." *Id*. at *6. Similarly, the circumstances that Nelson witnessed upon arriving at the Whataburger tended to contradict the information he had received that there was a driver passed out in the drive-through lane and, unlike the officer in *Adams*, Nelson lacked any additional corroboration of the tip—such as knowledge that Griffey had a history of driving while intoxicated. Furthermore**,** the record does not reflect that the citizen informant in the present case ever reported that Griffey appeared intoxicated.

In light of the lack of corroboration of the citizen-informant tip and the fact that Nelson observed facts that actually contradicted the information in the tip, we hold that the manager's report that a driver was passed out behind the wheel in the drive-through lane, standing alone, was insufficient to establish reasonable suspicion that Griffey was intoxicated, obstructing a passageway, or involved in any other criminal activity at the inception of her detention. As a result, we affirm the trial court and hold that Griffey was unlawfully detained in violation of her rights under the Fourth Amendment.

## CONCLUSION

Based on the totality of the circumstances, Nelson did not have reasonable suspicion to detain Griffey. Therefore, we hold that the trial court did not err in its application of the law to the facts of this case and that the motion to suppress was properly granted. We affirm the trial court's order.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed:  December 13, 2007

Publish